1  RONALD P. SLATES, State Bar #43712
   DAREN M. SCHLECTER, Of Counsel, State Bar #29537
2  RONALD P.  SLATES, A PROFESSIONAL CORPORATION
   500 South Grand Avenue, Biltmore Tower Suite 2010
3  Los Angeles, California 90071
   (213) 624-1515 / FAX (213) 624-7536
4  rslates2@rslateslaw.com

5  Attorneys for Plaintiff
   SV Ventures, LLC, an Ohio limited liability company
6

7

8                  UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

10

11  In re                              ) CASE NO. 2:20-bk-14552-ER
                                       )
12  KHURRAM MOHAMMED aka FASI          ) Chapter 7
    KHURRAM aka MOHAMMAD               )
13  SAMIUZZAMAN AKRAM                  ) Adversary No:
                                       )
14      Debtor.                        ) **COMPLAINT FOR NON-**
    _____) **DISCHARGEABILITY FOR:**
15                                     ) **1) FRAUD (Fraudulent representations and**
    SV VENTURES, LLC, an Ohio liability ) **Promises); FRAUD (False pretenses and false**
16  company,                           ) **representations) 11 U.S.C. §523(a)(2)(A)**
                                       ) **2) EMBEZZLEMENT/ CONVERSION**
17      Plaintiff,                     ) **(Debts Incurred Through Embezzlement) 11**
                                       ) **U.S.C. §523(a)(4)**
18  vs.                                ) **3) WILLFUL AND MALICIOUS INJURY**
                                       ) **TO PROPERTY (Debts Incurred Through**
19  KHURRAM MOHAMMED aka FASI          ) **Willful and Malicious Injury to Property) 11**
    KHURRAM aka MOHAMMAD               ) **U.S.C. §523(a)(6)**
20  SAMIUZZAMAN AKRAM and DOES 1       )
    through 10, inclusive,             )
21                                     )
        Defendant.                     )
22  _____)

23

24      TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE

25  AND TO ALL INTERESTED PARTIES:

26                    I.  **GENERAL ALLEGATIONS**

27      1.    Plaintiff, SV VENTURES, LLC (alternatively referred to herein as "Plaintiff" and/or

28  "SV Ventures"), is now and was, at all times herein mentioned, a limited liability company,

1   authorized to and doing business in the State of Ohio with its principal place of business located at

2   6150 Nicholson Drive, in the City of Hudson, County of Summit, State of Ohio.

3       2.      Plaintiff is informed and believes and, based upon such information and belief, alleges

4   that Defendant Khurram Mohammed aka Fasi Khurram aka Mohammad Samiuzzaman Akram

5   (alternatively referred to herein as "Khurram", "Defendant" and/or "Debtor"), is now and was, at all

6   times herein mentioned, an individual residing in the County of Los Angeles, State of California.

7   Defendant Khurram is the debtor in the above-captioned Chapter 7 bankruptcy action bearing Case

8   #2:20-bk-14552-ER filed on May 18, 2020.

9       3.      Plaintiff is further informed and believes and, based upon such information and belief,

10  alleges that Defendant Khurram is now and was, at all times herein mentioned, an officer, director and

11  majority shareholder of  AWAAZ PRODUCTIONS INC, a suspended Delaware corporation (same

12  having been suspended on March 1, 2012) ("API").

13      4.      Plaintiff alleges, that Defendant Khurram (hereinafter referred to as "Defendant

14  Shareholder") is, and at all times herein mentioned was, the majority shareholder of the stock of API

15  and/or promotor of API and/or subscriber to stock therein.   There exists, and at all times herein

16  mentioned existed, a unity of interest between Defendant Shareholder and API, such that any

17  individuality and separateness between the Defendant Shareholder and API have ceased, and API is

18  the alter ego of Defendant Shareholder as follows:

19          a.      Plaintiff alleges that API is, and at all times herein mentioned was, a mere

20                  shell and sham without capital, assets, stock or stockholders.   API was

21                  conceived, intended, and used by Defendant Shareholder as a device to avoid

22                  individual liability and for the purpose of substituting a financially insolvent

23                  corporation in the place of Defendant Shareholder.   At no time after API

24                  became incorporated was any stock authorized to be issued or issued nor has

25                  any permit for issuance of stock been applied for with the Commissioner of

26                  Corporations.

27          b.      Plaintiff alleges that API is, and at all times herein mentioned was, so

28                  inadequately capitalized that, compared with the business to be done by API

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

Complaint for Non-Dischargeability

1    and the risks of loss attendant thereto, its capitalization was illusory or trifling.

2    c.    Plaintiff alleges that API is, and at all times herein mentioned was, the alter

3    ego of Defendant Shareholder and there exists, and at all times herein

4    mentioned has existed, a unity of ownership between Defendant Shareholder

5    and API such that any separateness has ceased to exist in that Defendant

6    Shareholder used assets of API for his personal use, caused assets of API to be

7    transferred to them without adequate consideration, and withdrew funds from

8    API's bank accounts for his personal use.

9    d.    Plaintiff alleges that API is, and at all times mentioned herein was, a mere

10    shell, instrumentality and conduit through which Defendant Shareholder

11    carried on his business in the name of API exactly as he conducted it previous

12    to incorporation exercising complete control and dominance of such business

13    to such an extent that any individuality or separateness of API and Defendant

14    Shareholder do not now, and at any time herein mentioned did not, exist.

15    e.    Plaintiff alleges that API is, and at all times herein mentioned was, controlled,

16    dominated, and operated by Defendant Shareholder as his individual business

17    and alter ego, in that the activities and business of API was carried out without

18    the holding of Directors or Shareholders meetings, no records or minutes of

19    any corporate proceedings were maintained, and Defendant Shareholder

20    entered into personal transactions with API without the approval of other

21    directors or shareholders.

22    f.    Plaintiff alleges that adherence to the fiction of the separate existence of API

23    as an entity distinct from Defendant Shareholder would permit abuse of the

24    corporate privilege and would sanction fraud in that Defendant Shareholder

25    caused funds to be withdrawn from API and distributed said funds without any

26    consideration to API, all for the purpose of avoiding and preventing

27    attachment and execution by creditors, including Plaintiff, thereby rendering

28    API insolvent and unable to meet its obligations.

*Ronald P. Slates, A Professional Corporation*
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

g.   Plaintiff alleges that adherence to the fiction of separate existence of API as an entity distinct from Defendant Shareholder would permit abuse of the corporate privilege and produce an inequitable result in that Defendant Shareholder represented to Plaintiff that said Defendant Shareholder would be responsible for corporate obligations and the transaction complained of herein was entered into under the belief that Defendant Shareholder was, in reality, the true party obligated.

h.   Plaintiff alleges that adherence to the fiction of the separate existence of API as an entity distinct from Defendant Shareholder would permit abuse of the corporate privilege and produce an inequitable result in that Defendant Shareholder made loans to API and guaranteed certain of its obligations thereby enabling API to return to active business, without adequate financing and without capital stock, which return to business invited the public generally, and Plaintiff in particular, to deal with API to Plaintiff's loss as herein pleaded.

5.   As a result of the acts, and omissions complained of hereinabove, said Defendant Shareholder is jointly and severally liable for all relief sought herein by Plaintiff.

6.   Plaintiff is further informed and believes and, based upon such information and belief, alleges that at the time Defendant Khurram entered into the transactions complained of herein with Plaintiff, Defendant Khurram knew and was well aware of the fact that API had been suspended, and that in fact said transactions were for the sole benefit of Defendant Khurram.

7.   The true names and capacities of Defendants DOES 1 through 10, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff will amend this Complaint to allege said Doe Defendants' true names and capacities when the same has been ascertained.  Plaintiff is informed and believes and based upon such information and belief alleges that each Defendant designated herein is responsible in some actionable manner for the occurrences and injuries alleged herein.

8.   Plaintiff is informed and believes and based upon such information and belief alleges

Complaint for Non-Dischargeability

1    that at all times herein mentioned, Defendants, and each of them, were agents, servants,

2    representatives, joint venturers, partners, alter egos and/or employees of their Co-Defendants and, in

3    doing the things hereinafter alleged, were acting within the course and scope of their authorities as

4    agents, servants, representatives, joint venturers, partners, alter egos and/or employees with the

5    permission and consent of their Co-Defendants, each Co-Defendant having ratified the acts of the

6    other Co-Defendants.

7        9.      Plaintiff is informed and believes and upon such information and belief alleges that

8    each of the Defendants named herein as Does 1 through 10, inclusive, were and are in some manner

9    responsible for the actions, acts and omissions herein alleged, and for the damage caused by the

10    Defendants, and are, therefore, jointly and severally liable for the damages caused to Plaintiff.

11       10.     Plaintiff is informed and believes and upon such information and belief alleges that

12    each of the Defendants, including Does 1 through 10, inclusive, were, at all times herein mentioned,

13    acting in concert with, and in conspiracy with, each and every one of the remaining Defendants.

14       11.     Wherever appearing in this Complaint, each and every reference to Defendants or to

15    any of them, is intended to be and shall be a reference to all Defendants hereto, and to each of them,

16    named and unnamed, including all fictitiously named Defendants, unless said reference is otherwise

17    specifically qualified.

18              **II.   JURISDICTION AND VENUE**

19       12.     This Court has jurisdiction over this adversary proceeding for non-dischargeability

20    pursuant to 11 U.S.C. §157(b)(2)(I) and 28 U.S.C. §1334. This Court has jurisdiction over Plaintiff's

21    523 claims under 28 U.S.C. §§157(b)(2)(B), (b)(4), (b)(5), (c)(1), 1334(a),(b), which are non-core but

22    otherwise related to the instant bankruptcy case and the determination of non-dischargeability under

23    11 U.S.C. §523(a)(2)(A).

24       13.     Venue properly lies in this judicial district pursuant to 28 U.S.C. §1409(a) in that the

25    instant proceeding is related to the Khurram Bankruptcy under 11 U.S.C., which is before this

26    Honorable Court.

27        **III.   MATERIAL FACTS PERTAINING TO ALL CLAIMS FOR RELIEF**

28       14.     On or about April 11, 2018, Plaintiff entered into a written business/commercial loan

*Ronald P. Slates, A Professional Corporation*
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

1  agreement with Defendants, and each of them, whereby Plaintiff's assignor, SV LLC, agreed to loan

2  to Defendants, and each of them, at least the sum of $50,000.00 plus other funds, as needed and

3  agreed upon by the parties, for the purchase of a Grip & Lighting Truck and its equipment.  A true

4  and correct copy of said written Loan Agreement is attached hereto and incorporated herein by

5  reference as Exhibit "1" with the same force and effect as though set forth in full.

6       15.    Further to Exhibit "1" hereto, Defendants, and each of them, agreed that Plaintiff

7  would hold legal title to the Grip and Lighting Truck and its equipment until payment in full had been

8  made pursuant to the written agreement.  A true and correct copy of photographs of the alleged Grip

9  Truck are attached hereto and incorporated herein by reference as Exhibit "2".

10       16.    Further to Exhibit "1" hereto, Defendants, and each of them, agreed to pay Plaintiff

11  the sum of $5,000.00 per month commencing on August 11, 2018 and continuing until the full amount

12  of the loan had been repaid.

13       17.    Further to Exhibit "1" hereto, Defendants, and each of them, agreed that the

14  outstanding indebtedness due would accrue lawful interest on the unpaid balance at the lawful rate

15  of 10% per annum.

16       18.    Further to Exhibit "1" hereto, Defendants, and each of them, gave to Plaintiff two (2)

17  post dated checks in the sum of $50,000.00 each dated July 5, 2019, one dated July 5, 2019 drawn on

18  the personal account of Defendant Khurram at US Bank (which had no check #) and one drawn on

19  API's account with Bank of America Account #121000358 bearing Check #0997 (which account

20  Khurram treated as his own personal account).  Said post-dated checks were given by Defendants, and

21  each of them, to Plaintiff as a "guarantee" for repayment of the loan.  Said post-dated checks were to

22  be held by Plaintiff until July 5, 2019, at which time Plaintiff was authorized to deposit one of said

23  checks unless payment in full of the amount loaned by Plaintiff to Defendants, and each of them, had

24  been made.  A true and correct copy of Khurram's personal check drawn on US Bank is attached

25  hereto and incorporated herein by reference as Exhibit "3".  A true and correct copy of Check #0997

26  drawn on Bank of America is attached hereto and incorporated herein by reference Exhibit "4".

27       19.    Pursuant to the Exhibit "1" hereto, from April 11, 2018 through August 27, 2018,

28  Plaintiff loaned to Defendants, and each of them, additional funds as needed and agreed to in the

Complaint for Non-Dischargeability

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

1  amount of $27,112.00 bringing the total outstanding indebtedness due to at least the sum of

2  $77,112.00 or according to proof at the time of trial.

3       20.    On or about August 11, 2018, Defendants, and each of them, breached the terms and

4  conditions of Exhibit "1" hereto in that they failed to pay the agreed upon monthly payment of

5  $5,000.00 to Plaintiff.  Defendants, and each of them, further breached the terms and conditions of

6  Exhibit "1" hereto in that Defendants did not purchase the Grip and Lighting Truck and did not turn

7  legal title thereto over to Plaintiff despite the fact that Khurram lied about purchasing the truck and

8  even submitted photographs depicting such truck (Exhibit "2" hereto).

9       21.    On July 5, 2019, Plaintiff attempted to cash Exhibit "3" hereto (the personal check of

10  Khurram) and was advised by US Bank that the account was closed.

11      22.    In light of the fact that Khurram's check was unable to be cashed due to the bank

12  account being closed, on July 5, 2019, Plaintiff deposited API's check (Exhibit "4" hereto) into

13  Plaintiff's account at US Bank.   On July 8, 2019, Plaintiff was advised by US Bank that the check

14  had been returned unpaid due to Not Sufficient Funds.

15      23.    As a result of Defendants' breach of the terms and conditions of Exhibit "1" hereto

16  between Plaintiff and Defendants, and each of them, Plaintiff, on or about September 6, 2019, filed

17  a State Court action against Defendant and others in the Los Angeles Superior Court entitled *Richard*

18  *Carl Knapp, as the assignee of SV Ventures, LLC v. Awaaz Productions, Inc., Fasi Khurram and Sami*

19  *Akram* (as SV Ventures was/is not authorized to do business in California) bearing Case No.

20  19STCV31744 (the "State Court Action") alleging damages in at least the sum of Seventy Seven

21  Thousand One Hundred Twelve and 00/100 Dollars ($77,112.00) or according to proof at the time

22  of trial together with interest thereon at the lawful rate of 10% per annum from and after August 11,

23  2018.

24      24.    Plaintiff also sought punitive and exemplary damages against Defendants herein based

25  upon causes of action for Fraud - Intentional Misrepresentation and Fraud - Promise Made Without

26  Intent to Perform.  A true and correct copy of the Complaint in the State Court Action is attached

27  hereto and incorporated herein by reference as Exhibit "5".  Plaintiff reserved the right to seek

28  $75,000.00 in punitive damages in the event of a default pursuant to a Notice of Reservation of Right

1  to Seek Punitive Damages on Default Judgment.  C.C.P. § 425.115.  A true and correct copy of said

2  Notice of Reservation of Right is attached hereto and incorporated herein by reference as Exhibit "6".

3       25.    In the State Court Action, API and Sami Akram were personally served with the

4  Summons and Complaint on October 22, 2019.

5       26.    In the State Court Action, Defendant Khurram was personally served with the

6  Summons and Complaint on October 28, 2019.

7       27.    The Default of API, Sami Akram and Defendant Khurram was entered on December

8  2, 2019.

9       28.    In the State Court Action, the default judgment package was filed on February 21, 2020

10  in anticipation of an OSC re Entry of Default Judgment which was set for March 27, 2020 at 8:30

11  a.m., in Department 53 of the Los Angeles Superior Court, the Honorable Robert B. Broadbelt, Judge

12  Presiding.

13       29.    As a result of COVID-19, the aforesaid OSC was continued on the Court's own Motion

14  to May 21, 2020 and then subsequently it was continued again to the present date of August 21, 2020.

15       30.    Plaintiff, in support of its within Complaint, alleges as follows:

16           a.    Commencing in or about March of 2018 and continuing through the present,

17               Defendant Khurram, personally, falsely, fraudulently and intentionally made

18               the following oral representations to Plaintiff's Managing Member, Yugandhar

19               Kalagara ("Y. Kalagara"), with regard to the loan of $77,112.00 and when

20               payment of the monies loaned could be expected:

21           b.    In March of 2018, Khurram, individually and as the agent for API, contacted

22               Y. Kalagara with regard to Plaintiff loaning Defendant Khurram (and API) the

23               sum of $50,000.00 to buy a Grip and Lighting Truck.  Defendant Khurram,

24               individually and on behalf of API, advised Y. Kalagara that the Grip and

25               Lighting Truck would enable API's business (a filming company) to expand

26               and flourish;

27               i.    During this meeting Khurram promised that he would turn over legal

28                   title to the Grip and Lighting Truck (once purchased) to Plaintiff to

Complaint for Non-Dischargeability

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

secure the loan;

ii.    Khurram also represented to Plaintiff that AWAAZ was a viable corporation formed in the State of Delaware and was authorized to do business in California, and had deals and business transactions which would allow AWAAZ/Khurram to repay the monies loaned on time.

(1)    The true facts were that Khurram knew that AWAAZ was a suspended corporation which had absolutely no income upon which Khurram could draw to pay the outstanding amounts due to Plaintiff;

iii.    Khurram provided Plaintiff with a copy of a driver's license which had an outdated address (which was different from that listed on the Agreement between the parties) and which Plaintiff later learned had been suspended.  A true and correct copy of said driver's license is attached hereto and incorporated herein by reference as Exhibit "7".

c.    On April 11, 2018, Y. Kalagara, as the Managing Member of SV Ventures, and Defendant Khurram and API entered into a written Loan Agreement. Pursuant thereto, SV Ventures loaned Defendant Khurram and API the sum of $50,000.00;

d.    On and after April 12, 2018, Khurram, individually and on behalf of API, advised Y. Kalagara that Khurram and API needed additional operating capital (in the amount of $27,112.00) for additional equipment including but not limited to an Arris (Cinepower) light and the items set forth on the Final Inventory Spreadsheet, a true and correct copy of which is attached hereto and incorporated herein by reference as Exhibit "8";

e.    At all times, Defendant Khurram, individually and on behalf of API, advised Y. Kalagara that the purchase of the Grip and Lighting Truck and all of the additional equipment would enhance the business and bring substantial

Complaint for Non-Dischargeability

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

1   financial returns to it (so that it could easily pay back the loan from SV LLC);

2   f.   During this same time, Defendant Khurram, individually and on behalf of API,

3   gave Y. Kalagara as a guarantee for the monthly payments, two (2) post-dated

4   checks (please see Exhibits "3" and "4" hereto) dated July 5, 2019, with the

5   promise that if the aforesaid loan was not repaid by July 5, 2019, Plaintiff

6   could cash one of said checks recovering the $50,000.00;

7   g.   On or about August 13, 2018, when Khurram and API failed to pay the first

8   payment of $5,000.00 to Plaintiff and had failed to tender legal title to the Grip

9   and Lighting Truck allegedly purchased by Khurram and API. Khurram

10   advised Y. Kalagara that it was Ramadan so he couldn't pay the monies due;

11   h.   Y. Kalagara, from August of 2018 through February of 2019, had numerous

12   telephone calls with Defendant Khurram, wherein Defendant Khurram

13   continually made excuses for why payment could not be made on the

14   outstanding indebtedness due, which included statements that Y. Kalagara

15   should "trust him (Khurram)"; that payment would be made shortly; that he

16   (Khurram) was going to India to sell his property and return all of the money

17   to SV Venture;

18   i.   On April 25, 2019, Defendant Khurram, individually and on behalf of API.

19   sent a text message to Y. Kalagara wherein he advised that "I was getting some

20   support back from India looks like nothing will be happening until elections

21   are over which is I heard May 23rd, so I need to wait for further planning from

22   my side. . ."  A true and correct copy of said text message is attached hereto

23   and incorporated herein by reference as Exhibit "9";

24   j.   In April of 2019, Defendant Khurram, individually and on behalf of API,

25   advised Y. Kalagara that API had a "deal" with the Indian arm of Netflix but

26   needed an additional $60,000.00 in operating capital in order to finance the

27   transaction.  Y. Kalagara, individually and on behalf of Plaintiff refused to

28   loan Khurram and/or API the additional operating capital, especially in light

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

1   of the fact that all of Defendants' promises had gone unfulfilled (See Exhibit

2   "9");

3       31.    The aforesaid representations made by Defendant Khurram were in fact false,

4   fraudulent and intentional.  The true facts were that Defendant Khurram (and API) knew, at the time

5   Khurram made the foregoing false and fraudulent representations that Khurram (and API) had no

6   intention of (a) purchasing a Grip and Lighting Truck or the Arris lights or the inventory;  (b) turning

7   legal title to the truck and equipment over to Plaintiff, or (c) making good either of the $50,000.00

8   post-dated checks given by Defendant Khurram to Y. Kalagara and Plaintiff as a guaranty for

9   repayment of the loan.  Furthermore, Defendants knew or should have known that they did not and

10   would not have sufficient funds and/or financing to pay the outstanding indebtedness due to Plaintiff

11   and were making said false and fraudulent representations to lull Y. Kalagara and Plaintiff into a false

12   sense of security so that Y. Kalagara and Plaintiff would not only loan to Khurram (and API) the sum

13   of $77,112.00 but would in fact forbear from taking appropriate legal action to collect the outstanding

14   amounts due.  Furthermore, Khurram had no intention whatsoever of paying the remaining amounts

15   due and owing to Y. Kalagara and Plaintiff at the time the representations were made or at any time

16   thereafter but rather Khurram wanted said monies for his own unjust enrichment.

17       32.    When Khurram intentionally made these false and fraudulent representations he knew

18   them to be false, and these false and fraudulent representations were made by Khurram with the intent

19   to defraud and deceive Y. Kalagara and Plaintiff and with the intent to induce Y. Kalagara and

20   Plaintiff to enter into the transactions described herein and to act in the manner herein alleged.

21       33.    Plaintiff at the time these false and fraudulent representations were intentionally made

22   by Defendant Khurram, s, and each of them, and at the time Plaintiff took the actions herein alleged,

23   was ignorant of the falsity of Defendant Khurram's representations and believed them to be true.  In

24   justifiable reliance on these false and fraudulent representations, Plaintiff was induced to and did loan

25   to Khurram (and API) the sum of $77,112.00 and was induced to and did forbear from filing a lawsuit

26   and bringing an Application for Right to Attach Order and Writ of Attachment to collect the

27   outstanding amount due in the State Court Action.  Had Y. Kalagara and Plaintiff known the actual

28   facts, it would not have loaned the sum of $77,112.00 to Defendant Khurram (and API) and would

Complaint for Non-Dischargeability

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

1   not have agreed to forbear from taking legal action. Y. Kalagara's and Plaintiff's reliance on

2   Khurram's false and fraudulent representations was justified because Defendant Khurram and

3   Yugandhar Kalagara had been schoolmates throughout medical school and long-time friends and

4   shared mutual trust. Additionally, Defendant Khurram had told Yugandhar Kalagara that the loan of

5   $77,112.00 had given him a "second chance at life" as his career as a doctor had not gone well.

6       34.    As stated in the Declaration of Y. Kalagara in support of SV Ventures Request for

7   Entry of Default Judgment in the State Court Action, a true and correct copy of which Declaration is

8   attached hereto and incorporated herein by reference as Exhibit "10", Y. Kalagara believes that all

9   of the statements made by Khurram were fraudulently and were made with the intent to defraud Y.

10  Kalagara and SV Ventures.

11      35.    If this Honorable Court does not enter a Judgment of Non-Dischargeability against

12  Khurram in the within action, Y. Kalagara and Plaintiff will have no other remedies at law to recover

13  its damages because API is insolvent and Sami Akram (Khurram's brother) is probably not connected

14  in any way to API as Defendant Khurram has admitted in his Bankruptcy Petition that he has used his

15  brother's name as an aka of his own.

16      36.    Plaintiff further alleges, based upon an independent investigation of the fraudulent

17  business practices of Khurram, that Khurram has for many years embarked on a course of fraudulent

18  business transactions with others, including Plaintiff, and that his "modus Operandi" throughout all

19  of the transactions is to defraud the people from whom he has allegedly borrowed funds with no

20  intention of every paying said monies back as follows:

21      a.    In early 2010, Praveen Suggala subleased a space in an office building for

22      $1,000.00. Khurram siphoned off the monies to his own accounts rather than

23      paying same to building management. As a result Mr. Suggala had to pay the

24      rent to the building management. He filed a Small Claims action on or about

25      July 23, 2010 in Fremont, California bearing Case No. FS10494642 against

26      Khurram and obtained a Judgment but was never able to collect same as

27      Khurram left Alameda County;

28      b.    On or about July 16, 2016, Ankit Shah (International Solutions Sources LLC)

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

Complaint for Non-Dischargeability

*Ronald P. Slates, A Professional Corporation*
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

1    loaned Khurram $20,000.00 for organizing a film festival called WFF; the

2    term of the loan was for 14 days.  Khurram agreed to give Mr. Shah, as

3    collateral for the loan, a food truck and a post-dated check.  Mr. Shah on or

4    about February 15, 2016, gave a check drawn on the account of International

5    Solution Sources LLC at Wells Fargo Bank (Check #1567) to Khurram.  Mr.

6    Shah never received the food truck and the $26,000.00 check [drawn on the

7    account of AWAAZ at Bank of America (Check #1006) dated July 28, 2016]

8    which Khurram gave to Mr. Shah bounced on September 26, 2019 (with the

9    notation thereon that the account was closed before the check was ever issued

10    by Khurram to Mr. Shah).  A true and correct copy of the Promissory Note,

11    Check #1567 and Check #1006 are attached hereto and incorporated herein by

12    reference as Exhibit "11";

13    c.    On or about September 16, 2017, Khurram fraudulently induced Asma Ahmed

14    to invest $50,000.00 (via a cashier's check) with his company.  Khurram sent

15    Ms. Ahmed an airplane ticket to travel to San Jose from Michigan to execute

16    the investment agreement.  When Ms. Ahmed arrived Khurram took her to

17    dinner at the Consuelo Mexican Bistro.  Khurram produced a 9-page

18    agreement for Ms. Ahmed to sign.  However, she became suspicious and

19    refused to sign same.  Sometime during the time that Khurram and Ms. Ahmed

20    were in the restaurant, Khurram stole the $50,000.00 cashier's check from Ms.

21    Ahmed's purse (all without her knowledge), and she did not discover said theft

22    until she returned to her home in Michigan.  On September 19, 2017,

23    immediately upon discovering the theft of the $50,000.00 cashier's check, Ms.

24    Ahmed went to her bank to place a stop payment on the cashier's check but

25    was advised that the bank had already transferred the money to the suspect.

26    Ms. Ahmed thereafter filed a police report with the San Jose Police

27    Department.  Ms. Ahmed was unable to pursue the action as she lived in

28    Michigan.  A true and correct copy of the police report filed by Ms. Ahmed is

Complaint for Non-Dischargeability

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

attached hereto and incorporated herein by reference as Exhibit "12";

d.    Rupak Chaterjee - Mr. Chaterjee is a film maker.  He loaned Khurram $2,200 on September 26, 2019 as a personal loan.  Khurram promised Chaterjee that he would provide collateral to Mr. Chaterjee in the form of "equipment".  Khurram never provided the equipment and disappeared;

e.    Cine Power light (a company that sells lighting equipment in Los Angeles) - on April 10, 2018, Khurram brought a consumer complaint against Cine Power for non-delivery of lighting equipment (which was not true) and tried to recover his money after the sale was over.  Cine Power defended the action and ultimately prevailed;

f.    Munni Alvi Irone dba Art 4 Peace Awards in 2020 brought an action in the United States District Court , Central District of California, Western Division bearing Case No. CV20-01841-JEW-PVcx against Khurram and API for Trademark Infringement; Trademark Dilution, Unfair Competition and False Advertising, Contributory Trademark Infringement and Vicarious Trademark Infringement for Khurram's fraudulent activities involving Art 4 Peace Awards trademark(s) and reputation, all to  Art 4 Peace Awards' damages in at least the sum of $250,000.00.  A true and correct copy of the Complaint filed by Munni Alvi Irone is attached hereto and incorporated herein by reference as Exhibit "13".

37.    Further, Khurram has been using two (2) Social Security Numbers.  One SSN xxx-xx-4151 (which was used from 11/13/18 to the present), and xxx-xx-8835 (which was issued in Oregon in 1987 and has been used from 11/19/2014 to the present).  It further appears from Plaintiff's independent investigation that SSN xxx-xx-8835 actually belongs to a woman named Leila N. Jifroodi (DOB 08/1959) who resides at 13470 NW Countryview Way, Portland, Oregon 97229.  Thus, Khurram has been and presently is committing a federal crime by the use of two (2) Social Security Numbers, one of which xxx-xx-8835 definitely does not belong to him.

38.    Plaintiff alleges that all of the aforesaid actions of Khurram clearly support Plaintiff's

Complaint for Non-Dischargeability

1  contention that Khurram's modus operandi is to fraudulently coerce people into loaning Khurram

2  (either individually or through one of his "bogus" entities including but not limited to API) monies

3  when he in fact has no intention of ever repaying same but rather seeks to use said monies for his own

4  benefit.

5  ### IV.  FIRST CLAIM FOR RELIEF

6  ### TO DETERMINE DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)

7  ### (Debts Incurred Through False Pretenses, False Representation or Actual Fraud)

8  39.      Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 38

9  inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full.

10  40.      Defendant/Debtor represented to Plaintiff the following:

11  <u>March, 2018 Communications and Meeting with Defendant</u>

12  a.      In March of 2018, Khurram, individually and as the agent for API, contacted

13          Y. Kalagara with regard to Plaintiff loaning Defendant Khurram (and API) the

14          sum of $50,000.00 to buy a Grip and Lighting Truck.  Defendant Khurram,

15          individually and on behalf of API, advised Y. Kalagara that the Grip and

16          Lighting Truck would enable API's business (a filming company) to expand

17          and flourish;

18  b.      During this meeting Khurram promised that he would turn over legal title to

19          the Grip and Lighting Truck (once purchased) to Plaintiff to secure the loan;

20  c.      Khurram also represented to Plaintiff that AWAAZ was a viable corporation

21          formed in the State of Delaware and was authorized to do business in

22          California, and had deals and business transactions which would allow

23          AWAAZ/Khurram to repay the monies loaned on time;

24  d.      Khurram provided Plaintiff with a copy of a driver's license which had an

25          outdated address (which was different from that listed on the Agreement

26          between the parties) and which Plaintiff later learned had been suspended.  A

27          true and correct copy of said driver's license is attached hereto and

28          incorporated herein by reference as Exhibit "7"

Complaint for Non-Dischargeability

*Ronald P. Slates, A Professional Corporation*
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

<u>April 11, 2018 Loan Agreement for Grip & Lighting Truck/Equipment</u>

a.     On or about April 11, 2018, Plaintiff entered into a written business/commercial loan agreement with Defendants, and each of them, whereby Plaintiff's assignor, SV LLC, agreed to loan to Defendants, and each of them, at least the sum of $50,000.00 plus other funds, as needed and agreed upon by the parties, for the purchase of a Grip & Lighting Truck and its equipment. A true and correct copy of said written Loan Agreement is attached hereto and incorporated herein by reference as Exhibit "1" with the same force and effect as though set forth in full;

b.     Further to Exhibit "1" hereto, Defendants, and each of them, agreed that Plaintiff would hold legal title to the Grip and Lighting Truck and its equipment until payment in full had been made pursuant to the written agreement;

c.     Further to Exhibit "1" hereto, Defendants, and each of them, agreed to pay Plaintiff the sum of $5,000.00 per month commencing on August 11, 2018 and continuing until the full amount of the loan had been repaid.

d.     Further to Exhibit "1" hereto, Defendants, and each of them, agreed that the outstanding indebtedness due would accrue lawful interest on the unpaid balance at the lawful rate of 10% per annum

e.     Further to Exhibit "1" hereto, Defendants, and each of them, gave to Plaintiff two (2) post dated checks in the sum of $50.000.00 each dated July 5, 2019, one dated July 5, 2019 drawn on the personal account of Defendant Khurram at US Bank (which had no check #) and one drawn on API's account with Bank of America Account #121000358 bearing Check #0997 (which account Khurram treated as his own personal account). Said post-dated checks were given by Defendants, and each of them, to Plaintiff as a "guarantee" for repayment of the loan. Said post-dated checks were to be held by Plaintiff until July 5, 2019, at which time Plaintiff was authorized to deposit one of said

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

1    checks unless payment in full of the amount loaned by Plaintiff to Defendants,

2    and each of them, had been made.  A true and correct copy of Khurram's

3    personal check drawn on US Bank is attached hereto and incorporated herein

4    by reference as Exhibit "3".  A true and correct copy of Check #0997 drawn

5    on Bank of America is attached attached hereto and incorporated herein by

6    reference Exhibit "4".

7    <u>Additional Monies Lent Under April 11, 2018 Loan Agreement</u>

8    a.    On and after April 12, 2018, Khurram, individually and on behalf of API,

9    advised Y. Kalagara that Khurram and API needed additional operating capital

10    (in the amount of $27,112.00) for additional equipment including but not

11    limited to an Arris (Cinepower) light and the items set forth on the Final

12    Inventory Spreadsheet, a true and correct copy of which is attached hereto and

13    incorporated herein by reference as Exhibit "8"

14    b.    Pursuant to the Exhibit "1" hereto, from April 11, 2018 through August 27,

15    2018, Plaintiff loaned to Defendants, and each of them, additional funds as

16    needed and agreed to in the amount of $27,112.00 bringing the total

17    outstanding indebtedness due to at least the sum of $77,112.00 or according

18    to proof at the time of trial.

19    c.    At all times, Defendant Khurram, individually and on behalf of API, advised

20    Y. Kalagara that the purchase of the Grip and Lighting Truck and all of the

21    additional equipment would enhance the business and bring substantial

22    financial returns to it (so that it could easily pay back the loan from SV LLC)

23    41.    Defendant's representations to Plaintiff were false and made with the intent to deceive

24    insofar as:

25    a.    On July 5, 2019, Plaintiff attempted to cash Exhibit "3" hereto (the personal

26    check of Khurram) and was advised by US Bank that the account was closed.

27    b.    In light of the fact that Khurram's check was unable to be cashed due to the

28    bank account being closed, on July 5, 2019, Plaintiff deposited API's check

1 (Exhibit "4" hereto) into Plaintiff's account at US Bank.   On July 8, 2019,

2 Plaintiff was advised by US Bank that the check had been returned unpaid due

3 to Not Sufficient Funds.

4 c. The true facts were that Khurram knew that AWAAZ was a suspended

5 corporation which had absolutely no income upon which Khurram could draw

6 to pay the outstanding amounts due to Plaintiff

7 d. The true facts were that Defendant Khurram (and API) knew, at the time

8 Khurram made the foregoing false and fraudulent representations that Khurram

9 (and API) had no intention of (a) purchasing a Grip and Lighting Truck or the

10 Arris lights or the inventory;  (b) turning legal title to the truck and equipment

11 over to Plaintiff, or (c) making good either of the $50,000.00 post-dated checks

12 given by Defendant Khurram to Y. Kalagara and Plaintiff as a guaranty for

13 repayment of the loan.  Furthermore, Defendants knew or should have known

14 that they did not and would not have sufficient funds and/or financing to pay

15 the outstanding indebtedness due to Plaintiff and were making said false and

16 fraudulent representations to lull Y. Kalagara and Plaintiff into a false sense

17 of security so that Y. Kalagara and Plaintiff would not only loan to Khurram

18 (and API) the sum of $77,112.00 but would in fact forbear from taking

19 appropriate legal action to collect the outstanding amounts due.  Furthermore,

20 Khurram had no intention whatsoever of paying the remaining amounts due

21 and owing to Y. Kalagara and Plaintiff at the time the representations were

22 made or at any time thereafter but rather Khurram wanted said monies for his

23 own unjust enrichment.

24 42. Plaintiff justifiably relied on Defendant's representations because Defendant Khurram

25 and Yugandhar Kalagara had been schoolmates throughout medical school and long-time friends and

26 shared mutual trust.  Additionally, Defendant Khurram had told Yugandhar Kalagara that the loan of

27 $77,112.00 had given him a "second chance at life" as his career as a doctor had not gone well.

28 43. Plaintiff discovered after the making of the aforementioned representations that those

Complaint for Non-Dischargeability

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

1   representations were false, and Defendant knew that they were false and made the representations

2   with the intention and purpose to deceive Plaintiff and without any present intention of performing

3   according to those representations and further to obtain all of the benefits of the monies paid to

4   Defendant and inducing Plaintiff to pay the monies based on false representations.  Specifically:

5       a.    On or about August 13, 2018, when Khurram and API failed to pay the first

6       payment of $5,000.00 to Plaintiff and had failed to tender legal title to the Grip

7       and Lighting Truck allegedly purchased by Khurram and API. Khurram

8       advised Y. Kalagara that it was Ramadan so he couldn't pay the monies due;

9       b.    Y. Kalagara, from August of 2018 through February of 2019, had numerous

10       telephone calls with Defendant Khurram, wherein Defendant Khurram

11       continually made excuses for why payment could not be made on the

12       outstanding indebtedness due, which included statements that Y. Kalagara

13       should "trust him (Khurram)"; that payment would be made shortly; that he

14       (Khurram) was going to India to sell his property and return all of the money

15       to SV Venture;

16       c.    On April 25, 2019, Defendant Khurram, individually and on behalf of API.

17       sent a text message to Y. Kalagara wherein he advised that "I was getting some

18       support back from India looks like nothing will be happening until elections

19       are over which is I heard May 23rd, so I need to wait for further planning from

20       my side. . ."  A true and correct copy of said text message is attached hereto

21       and incorporated herein by reference as Exhibit "9";

22       d.    In April of 2019, Defendant Khurram, individually and on behalf of API,

23       advised Y. Kalagara that API had a "deal" with the Indian arm of Netflix but

24       needed an additional $60,000.00 in operating capital in order to finance the

25       transaction.  Y. Kalagara, individually and on behalf of Plaintiff refused to

26       loan Khurram and/or API the additional operating capital, especially in light

27       of the fact that all of Defendants' promises had gone unfulfilled (See Exhibit

28       "9"); and

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

Complaint for Non-Dischargeability

e.   Plaintiff was induced to and did forbear from filing a lawsuit and bringing an Application for Right to Attach Order and Writ of Attachment to collect the outstanding amount due in the State Court Action.  Had Y. Kalagara and Plaintiff known the actual facts, it would not have loaned the sum of $77,112.00 to Defendant Khurram (and API) and would not have agreed to forbear from taking legal action

44.   As a direct and proximate result of the Debtor's actions, Plaintiff has suffered losses in an amount in excess of $77,211.00.

45.   Defendant/Debtor's conduct violates 11 U.S.C. §523(a)(2)(A) and, therefore, Debtor's indebtedness to Plaintiff constitutes a non-dischargeable debt.

## V.   SECOND CLAIM FOR RELIEF

### TO DETERMINE DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(4)

### (Debts Incurred through Conversion under 11 U.S.C. §523(a)(4)

46.   Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 45 inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full.

47.   Plaintiff lent Defendant $50,000.00 and an additional $27,211.00 monies under the April 11, 2018 Loan Agreement to purchase a Grip and Lighting Truck, Arris lights and inventory in exchange for repayment as stated in the Loan Agreement.  Further to Exhibit "1" hereto, Defendants, and each of them, agreed that Plaintiff would hold legal title to the Grip and Lighting Truck and its equipment until payment in full had been made pursuant to the written agreement.

48.   Further to Exhibit "1" hereto, Defendants, and each of them, gave to Plaintiff two (2) post dated checks in the sum of $50.000.00 each dated July 5, 2019, one dated July 5, 2019 drawn on the personal account of Defendant Khurram at US Bank (which had no check #) and one drawn on API's account with Bank of America Account #121000358 bearing Check #0997 (which account Khurram treated as his own personal account).  Said post-dated checks were given by Defendants, and each of them, to Plaintiff as a "guarantee" for repayment of the loan.  Said post-dated checks were to be held by Plaintiff until July 5, 2019, at which time Plaintiff was authorized to deposit one of said checks unless payment in full of the amount loaned by Plaintiff to Defendants, and each of them, had

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

1    been made.

2    49.    Plaintiff discovered in or after loaning the monies to Defendant in or about April, 2019

3    that Defendant not only did not turn legal title thereto over to Plaintiff but that Defendants did not

4    purchase the Grip and Lighting Truck despite the fact that Khurram falsely represented that he had

5    purchased the truck and even submitted photographs depicting such truck. A true and correct copy

6    of the photographs submitted are attached hereto and incorporated herein by reference as Exhibit "2".

7    50.    Plaintiff then discovered in early July, 2019 that the post-dated checks were returned

8    non-sufficient funds.  Specifically, on July 5, 2019, Plaintiff attempted to cash Exhibit "3" hereto (the

9    personal check of Khurram) and was advised by US Bank that the account was closed.  In light of the

10    fact that Khurram's check was unable to be cashed due to the bank account being closed, on July 5,

11    2019, Plaintiff deposited API's check (Exhibit "4" hereto) into Plaintiff's account at US Bank.   On

12    July 8, 2019, Plaintiff was advised by US Bank that the check had been returned unpaid due to Not

13    Sufficient Funds.

14    51.    Based on the foregoing, Defendant(s) diverted the monies from Plaintiff on use other

15    than for Grip and Lighting Truck, Arris lights and inventory, including personal use, as among other

16    things, the facts demonstrate that neither his business nor bank accounts were operational at the time

17    he induced Plaintiff to give $77,211.00 in monies for business purposes.

18    52.    The aforementioned acts and the other acts alleged here constitute embezzlement as

19    Defendant's acts constitute a fraudulent conversion sufficient to establish a non-dischargeable debt

20    under 11 U.S.C. §523(a)(4).

21    53.    The Defendant/Debtor's conduct violates 11 U.S.C. §523(a)(4) and, therefore, the

22    Debtor's indebtedness to Plaintiff constitutes a non-dischargeable debt.

23    54.    As a direct and proximate result of the Debtor's actions, Plaintiff has suffered losses

24    in an amount in excess of $77,211.00.

25    **VI.    THIRD CLAIM FOR RELIEF**

26    **TO DETERMINE DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(6)**

27    **(Debts Incurred Through Willful and Malicious Injury to Property under 11 U.S.C.**

28    **§523(a)(6))**

Page 21

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

55.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 54 inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full.

56.     Plaintiff lent Defendant $50,000.00 and an additional $27,211.00 monies under the April 11, 2018 Loan Agreement to purchase a Grip and Lighting Truck, Arris lights and inventory in exchange for repayment as stated in the Loan Agreement.  Further to Exhibit "1" hereto, Defendants, and each of them, agreed that Plaintiff would hold legal title to the Grip and Lighting Truck and its equipment until payment in full had been made pursuant to the written agreement.

57.     Further to Exhibit "1" hereto, Defendants, and each of them, gave to Plaintiff two (2) post dated checks in the sum of $50,000.00 each dated July 5, 2019, one dated July 5, 2019 drawn on the personal account of Defendant Khurram at US Bank (which had no check #) and one drawn on API's account with Bank of America Account #121000358 bearing Check #0997 (which account Khurram treated as his own personal account).  Said post-dated checks were given by Defendants, and each of them, to Plaintiff as a "guarantee" for repayment of the loan.  Said post-dated checks were to be held by Plaintiff until July 5, 2019, at which time Plaintiff was authorized to deposit one of said checks unless payment in full of the amount loaned by Plaintiff to Defendants, and each of them, had been made.

58.     Plaintiff discovered in or after loaning the monies to Defendant in or about April, 2019 that Defendant not only did not turn legal title thereto over to Plaintiff but that Defendants did not purchase the Grip and Lighting Truck despite the fact that Khurram falsely represented that he had purchased the truck and even submitted photographs depicting such truck.  A true and correct copy of the photographs submitted are attached hereto and incorporated herein by reference as Exhibit "2".

59.     Plaintiff then discovered in early July, 2019 that the post-dated checks were returned non-sufficient funds.  Specifically, on July 5, 2019, Plaintiff attempted to cash Exhibit "3" hereto (the personal check of Khurram) and was advised by US Bank that the account was closed.  In light of the fact that Khurram's check was unable to be cashed due to the bank account being closed, on July 5, 2019, Plaintiff deposited API's check (Exhibit "4" hereto) into Plaintiff's account at US Bank.   On July 8, 2019, Plaintiff was advised by US Bank that the check had been returned unpaid due to Not Sufficient Funds.

Complaint for Non-Dischargeability

60.     Based on the foregoing, Defendant(s) diverted the monies from Plaintiff on use other than for Grip and Lighting Truck, Arris lights and inventory, including personal use, as among other things, the facts demonstrate that neither his business nor bank accounts were operational at the time he induced Plaintiff to give $77,211.00 in monies for business purposes.

61.     The aforementioned acts and the other acts alleged here constitute willful and malicious injury to Plaintiff's property sufficient to establish a non-dischargeable debt under 11 U.S.C. §523(a)(6)

62.     The Defendant/Debtor's conduct violates 11 U.S.C. §523(a)(6) and, therefore, the Debtor's indebtedness to Plaintiff constitutes a non-dischargeable debt.

63.     As a direct and proximate result of the Debtor's actions, Plaintiff has suffered losses in an amount in excess of $77,211.00.

WHEREFORE, Plaintiff prays that the Court:

1.     Determine the amount owed to Plaintiff from Defendant to be at least $77,211.00;

2.     Determine that Defendant's debts to Plaintiff are nondischargeable under 11 U.S.C. §523(a)(2)(A), (a)(4), and including but not limited to 11 U.S.C. §523(a)(6);

3.     Award of punitive or treble damages as requested in the State Court Action;

4.     Determine any remaining issues;

5.     Enter judgment for Plaintiff against Defendant in the amount owing, along with interest, costs and attorney fees pursuant to Federal Rule of Bankruptcy Procedure 7008 or any other document pursuant to Bankruptcy Rule or statute, and costs of suit; and

6.     That Plaintiff have such other and further relief as the Court deems appropriate.

Dated: August 24, 2020                         A PROFESSIONAL CORPORATION

/s/ Ronald P. Slates, Esq.

_____
BY:  RONALD P. SLATES, Esq.
Attorneys for SV Ventures, LLC, an Ohio limited liability company

Ronald P. Slates, A Professional Corporation
500 S. GRAND AVENUE, BILTMORE TOWER SUITE 2010
LOS ANGELES, CALIFORNIA 90071
(213) 624-1515 / FAX (213) 624-7536

Complaint for Non-Dischargeability